IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOSEPH TIMOTHY EGAN THORN,**

    **Plaintiff,**

    v.

    **Civil Action 2:14-cv-2402**
    **Judge Algenon L. Marbley**
    **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Joseph Timothy Egan Thorn, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply (ECF No. 17), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

### I. BACKGROUND

Plaintiff protectively filed his application for supplemental security income on October 4, 2011, alleging an onset date of January 29, 2011. Plaintiff's application was denied initially and

upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  Administrative Law Judge Edmund E. Giorgione ("ALJ") held a hearing on April 4, 2013, at which Plaintiff, represented by counsel, appeared and testified.  Dr. Jerry Oshesky, a vocational expert, also appeared and testified at the hearing.  On July 25, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  On October 15, 2014, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

      In his Statement of Errors, Plaintiff raises one issue.  Plaintiff asserts that the ALJ failed to sufficiently account for his limitations in concentration, persistence, or pace.  In support of this contention of error, Plaintiff relies upon *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), to argue that the ALJ's RFC failed to account for the moderate limitations in concentration, persistence, or pace that he found at step three of the sequential analysis.  Citing the opinions of state-agency consultants Drs. Voyten and Warren upon which the ALJ relied in formulating the RFC, Plaintiff maintains that the ALJ should have also limited him to performing tasks in an environment without fast-paced production demands.

      The Commissioner concedes that the ALJ did not explicitly incorporate a fast-pace restriction, but maintains that "more recent case law from [the United States Court of Appeals for] the Sixth Circuit undercuts the notion that a moderate limitation in concentration, persistence or pace compels RFC limitations beyond simple and repetitive tasks." (Comm'r's Mem. in Opp. 8, ECF No. 16.)  The Commissioner further posits that the ALJ's RFC accounted for a  pace restriction, citing the limitation to "a static work environment with static work

processes and procedures." (*Id*.) According to Plaintiff, "[b]y its very nature, a static environment excludes fast-paced work and adequately incorporates the opinions of Drs. Voyten and Warren." (*Id.* at 9.) The Commissioner alternatively argues that even if the Court finds that a "static work environment" limitation does not necessarily incorporate a pace limitation, reversal is still not warranted because the ALJ may have concluded that Plaintiff did not require a pace limitation, and substantial evidence would support such a conclusion.

## II. RELEVANT RECORD EVIDENCE[1]

In June 2010, in connection with Plaintiff's prior application for benefits, state-agency reviewing psychologist Vicki Warren, Ph.D., opined that Plaintiff had moderate limitations in social functioning and concentration, persistence, or pace. In the check-the-box portion of a mental residual functional capacity form, Dr. Warren indicated that she found Plaintiff to be moderately limited in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, and perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 306–07.) In the narrative portion, she opined that Plaintiff's symptoms "are severe enough to pose a limitation, but not severe enough to prevent work that is simple and routine in nature, with no intense social interaction." (R. at 308.)

---

[1]The Undersigned limits discussion to evidence bearing on the sole contention of error Plaintiff raises in his Statement of Errors. (ECF No. 11.)

In December 2011, state-agency reviewing psychologist Karla Voyten, Ph.D., evaluated the record evidence in connection with Plaintiff's current application for benefits.  She opined that Plaintiff "[r]etains the capacity to maintain attention, concentration, persistence and pace for simple, repetitive tasks in an environment without demand for fast pace due to [his] low coping skills [and] difficulty with attention."  (R. at 106.)  She further found that Plaintiff "[w]ould require a setting with limited, infrequent interaction with the public" and "where change is infrequent and easily explained and that would not require travel."  (R. at 107.)

In February 2012, Dr. Warren evaluated the updated record evidence.  She opined that Plaintiff "[r]etains the ability to understand and remember instructions for simple, repetitive tasks" and "to maintain attention, concentration, persistence and pace for simple, repetitive tasks in an environment without demand for fast pace . . . ."  (R. at 116–17.)  She also opined that Plaintiff "[w]ould require a setting with limited, infrequent interaction with the public" and "a setting where change is infrequent and easily explained and that would not require travel."  (R. at 117–18.)

At the administrative hearing, the ALJ proposed a series hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE.  When the ALJ presented a hypothetical question to the VE premised upon the RFC he ultimately found, the VE testified that the hypothetical individual would be able to perform work.  The VE identified the jobs of hand packer, cleaner, and production inspector as examples of jobs that exist in significant numbers in the national and regional economy that the hypothetical individual could perform.

### III.   THE ADMINISTRATIVE DECISION

At step one of the sequential evaluation,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since alleged onset date of October 4, 2011, the original alleged onset date of disability. At step two, the ALJ found that Plaintiff had the following severe impairments during the relevant period: autism/pervasive developmental disorder, depression, anxiety, bipolar disorder, and attention deficit disorder. The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. In discussing the Part B Listing Criteria, the ALJ made the following finding:

> Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. Limitations in concentration, persistence, or pace are best observed in work settings, but may also be reflected by limitations in other settings. In May 2010, [Plaintiff's] psychologist noted that [Plaintiff] was oriented to time, person, and place and that he did not exhibit thinking disorders. He

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

5

> noted [Plaintiff] did best with short step-by-step, concrete directions and that he was generally able to follow through on his own concrete, simple tasks. In October 2010, [Plaintiff's] school vocational team leader related that [Plaintiff] was at grade level in all academic skills areas. However, he noted that [Plaintiff] required support and redirection, especially during times of frustration. He further commented that while [Plaintiff] required assistance, he participated in assigned activities, he was attentive throughout the session, and he appeared interested in the work. By October 2010, it was noted [Plaintiff] had all coursework necessary for graduation. Significantly, [Plaintiff] has demonstrated sufficient concentration, persistence and pace to perform the activities set forth above (such as video games and playing cards). Such activities demonstrate, at a minimum, the ability to understand and follow simple instructions and maintain attention and concentration to perform at least simple tasks. In this context, it is noted that [Plaintiff] was able to understand and follow the hearing proceedings closely and fully without any observable difficulty and responded to questions in an appropriate manner. The reviewing psychologists with BDD opined that [Plaintiff] had moderate difficulties maintaining concentration, persistence, or pace. There is no credible or compelling evidence since the date of those determinations to support a greater restriction. Thus, the evidence in totality leads to a finding that [Plaintiff] has no more than a moderate limitation in concentration, persistence or pace.

(R. at 30 (internal citations to the record omitted).)

At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that [Plaintiff] had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] can have occasional and superficial contact with supervisors, coworkers, and the general public. Moreover, [Plaintiff] can perform simple, routine, repetitive tasks in a static work environment with static work processes and procedures.

(R. at 31).

In formulating this RFC, the ALJ accorded the opinions of the state-agency consultants, Drs. Voyten and Warren, "great weight," reasoning that their "assessments are consistent with and well supported by the evidence of the record as a whole." (*Id*.) He accorded the opinions of the other sources, all of whom found Plaintiff to be more limited in various respects, less weight. (*See* R. at 32 (assigning the opinion of Dr. Hernandez, who opined that Plaintiff needed an

6

environment of with "low emotional stress [and] extensive support and supervision," "some weight"); *Id*. (assigning opinion of school psychologist that Plaintiff needed a small group, structured setting, encouragement and incentives for task completion, and extra time to complete tasks "little weight"; R. at 32–33 (assigning opinion of school vocational team leader that Plaintiff required redirection and time away from frustrating circumstances "little weight"); R. at 33 (assigning opinion of psychological examiner for Franklin County Board of DD Services that Plaintiff had "marked impairment" in social functioning and difficulty in other areas "little weight"; *Id*. (assigning opinion of Dr. Audrey Todd that Plaintiff had "marked impairment in stress tolerance" "little weight").)

Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the state and national economy. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.

### IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

As set forth above, Plaintiff's sole contention of error is that the ALJ erred in crafting an RFC that fails to accommodate his moderate limitations in concentration, persistence, or pace. The Undersigned agrees that the ALJ's RFC determination, which parroted the limitations set forth in the controlling hypothetical question to the VE, failed to accurately convey the limitations he found credible. The Undersigned therefore concludes that reversal is warranted because the VE's testimony that Plaintiff can work as a hand packager, cleaner, and production inspector does not serve as substantial evidence that supports the ALJ's conclusion that Plaintiff can perform other work that exists in significant numbers in the national economy.

"In order for a VE's testimony to constitute substantial evidence that a significant number of jobs exists, the questions must accurately portray a claimant's physical and mental impairments." *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011).  In formulating the hypothetical question to, an ALJ is "required to incorporate those limitations accepted as credible by the finder of fact."  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Here, the ALJ's hypothetical question incorporated and mirrored the limitations he set forth in Plaintiff's RFC determination.  A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of RFC is an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e).  Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).  An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

9

The Court agrees with Plaintiff that *Ealy*, 594 F.3d 504, controls the outcome in this action. In *Ealy*, as in the instant action, the ALJ "placed more weight on the conclusions" of the state-agency consultant's assessment over other sources' assessments. 594 F.3d at 509, 514–15. In *Ealy*, the ALJ's controlling hypothetical question and mirroring RFC determination, however, failed to include the restriction on pace that the credited state-agency consultant explicitly found. (*Id*. at 511–12, 516–17.) The Sixth Circuit held that the RFC determination and hypothetical therefore "inadequately described" the claimant's limitations, which, in turn, disqualified the vocational expert's testimony from serving as substantial evidence that the claimant could perform the work the vocational expert identified. (*Id*. at 517.)

Such is the case here. In the instant action, as in *Ealy*, the ALJ assigned the greatest weight to the opinions of state-agency consultants Drs. Voyten and Warren, explaining that their "assessments are consistent with and well supported by the evidence of the record as a whole," and rejected the more restrictive limitations offered by other sources. (R. at 31–33.) As set forth above, Drs. Voyten and Warren both opined that Plaintiff required "an environment without demand for fast pace." (R. at 106, 116.) Although he credited Drs. Voyten's and Warren's assessments over other source opinions, the ALJ, without explanation, omitted a pace limitation from the RFC determination and hypothetical question posed to the VE. Under *Ealy*, the ALJ's omission of the explicit pace limitation that the sources he credited found renders the VE's testimony inadequate to serve as substantial evidence in support of his determination that Plaintiff was not disabled because he is able to perform other work that exists in significant numbers in the national economy. Because the ALJ's decision is not supported by substantial evidence, remand and reversal are required.

The Commissioner's arguments to the contrary lack merit. First, *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426 (6th Cir. 2014), the case upon which the Commissioner relies, does not compel a different result. In *Smith-Johnson*, the claimant relied upon *Ealy* to argue that the ALJ's finding that she had moderate limitations in concentration, persistence, or pace *required* inclusion of a specific pace limitation into the hypothetical posed to the VE. The *Smith-Johnson* Court rejected the claimant's assertion and distinguished *Ealy* as follows:

> Here, the limitation to simple, routine, and repetitive tasks adequately conveys Smith–Johnson's moderately-limited ability "to maintain attention and concentration for extended periods." Unlike in *Ealy*, Dr. Kriauciunas did not place any concrete functional limitations on her abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks. Instead, Dr. Kriauciunas plainly determined that Smith–Johnson could perform simple tasks on a "sustained basis," even considering her moderate limitations in maintaining concentration and persistence for "extended periods." In other words, the limitation to simple tasks portrays the tasks that she can perform without being affected by her moderate limitations. The ALJ thus did not fail to include a restriction on her ability to maintain concentration, persistence, or pace while performing simple tasks, and he further reduced the required attention and concentration by restricting her to routine and repetitive tasks.

579 F. App'x at 436–37. Here, as in *Ealy* and in contrast with *Smith-Johnson*, the sources the ALJ credited explicitly assessed a pace limitation (in addition to the other limitations) that the ALJ neither incorporated into the RFC and hypothetical question nor explained why the limitation was omitted.

The Commissioner's second argument, that the ALJ accounted for a pace limitation, is equally unavailing. According to the Commissioner, "a static work environment with static work processes and procedures,"—a restriction the ALJ *did* include in the RFC and hypothetical question—"excludes fast-paced work and adequately incorporates the opinions of Drs. Voyten

11

and Warren." (Comm'r's Mem. in Opp 9, ECF No. 16.) The Commissioner cites the dictionary definition of "static" and a cases she contends reflect that static excludes fast-paced work.

Neither the dictionary definition of "static" nor the case law from within this Circuit, however, support the interpretation the Commissioner advocates. The online Mirriam-Webster dictionary defines "static" as "showing little or no change, action or progress" (relevant simple definition) and "showing little change" (relevant full definition). Mirriam-Webster.com, *available at* http://www.merriam-webster.com (last visited January 14, 2016). Thus, the Undersigned concludes that the dictionary definition of the term "static" favors interpreting the word "static" to relate to the amount of change to be tolerated in a particular environment as opposed to pace. Moreover, such an interpretation makes sense given that Drs. Voyten and Warren, whose assessments the ALJ credited, both opined that Plaintiff required an environment "where change is infrequent and easily explained and that would not require travel." (R. at 107, 117–18.) Finally, a cursory review of cases within this Circuit reflects that ALJs consider restriction to a "static environment" to be separate and distinct from a pace or production quota restriction. *See, e.g., Downs v. Comm'r of. Soc. Sec.*, No. 15-3122, --- F. App'x ----, 2016 WL 97641, at *1, 4 (N.D. Ohio Jan. 11, 2016) (ALJ found claimant required "static duties and changes that can be explained" *and* an environment with "no strict production quotas"); *Grenauer v. Comm'r of Soc. Sec.*, No. 2:15-cv-555, 2016 WL 25981, at *4 (S.D. Ohio Jan. 4, 2016) (RFC reflects limitation to "static environment" *and* to environment "not involving a fast assembly-line pace [or] strict production quotas"); *Ruiz-Lopez v. Comm'r of Soc. Sec.*, No. 1:15-cv-169, 2015 WL 9558519, at *10 (N.D. Ohio Dec. 18, 2015) (ALJ found claimant was "unable to work at a production pace" *and* "required a generally static work setting but could tolerate a

12

few changes"); *Washington v. Comm'r of Soc. Sec.*, No. 1:14-cv-794, 2015 WL 8481563, at *2 (S.D. Ohio Dec. 10, 2015) (ALJ found that claimant "was not able to perform at a production rate pace" *and* could "tolerate few changes in a work routine setting, defined as working in a static environment"). Thus, if the ALJ intended to use the word "static" to refer to something other than the level of environmental change, he should have specifically defined the term to the VE.

Plaintiff's alternative argument, that the Commissioner could have concluded that a pace limitation was not warranted, likewise fails to persuade. As set forth above, the ALJ was required to explain how the evidence supports the limitations that he set forth in Plaitniff's RFC. *See* S.S.R. 96–8p, 1996 WL 374184, at *6–7. And the ALJ did so here by crediting the opinions of Drs. Voyten and Warren, declaring that their "assessments are consistent with and well supported by the evidence of the record as a whole." (R. at 31–33.) The problem is that despite crediting their opinions, the ALJ omitted a concrete limitation they assessed from Plaintiff's RFC and the controlling hypothetical question he posed to the VE without providing any explanation.

In sum, it is **RECOMMENDED** that Plaintiff's sole contention of error be **SUSTAINED**.

## VI. CONCLUSION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ

under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## VII. PROCEDURE ON OBJECTIONS

If Plaintiff seeks review by the District Judge of this Report and Recommendation, he may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

Plaintiff is specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

Date: January 25, 2015          /s/ *Elizabeth A. Preston Deavers*
                                ELIZABETH A. PRESTON DEAVERS
                                UNITED STATES MAGISTRATE JUDGE